PAULSEN LUMBER, INC., Plaintiff-Respondent, v.
ANDERSON, Defendant-Appellant.†

Supreme Court

*No. 76–307. Submitted on briefs September 12, 1979.—
Decided October 9, 1979.*
(Also reported in 283 N.W.2d 580.)

† Motion for reconsideration denied, with costs, on December 4, 1979.

For the appellant the cause was submitted on the brief of *Jerome L. Rinzel* of Cudahy.

For the respondent the cause was submitted on the brief of *Howard B. Schoenfeld* and *Peregrine, Marcuvitz, Cameron & Peltin, S.C.*, of Milwaukee.

HEFFERNAN, J. A single and controlling question is presented: Whether the failure of defendant to produce documents in response to plaintiff's subpoena duces tecum provides an adverse inference sufficient in itself to supply affirmative or substantive proof of an essential element otherwise lacking in plaintiff's case.

We conclude that it does not, and accordingly we reverse the judgment which the trial judge based totally on an inference derived from the defendant's failure to respond to the subpoena duces tecum.

This case arises out of a claim for civil liability based on the provisions of sec. 289.02(5), Stats.[1] The action

---

[1] "289.02 (5) THEFT BY CONTRACTORS. The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims have been paid. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or pro rata in cases of a deficiency, is theft of moneys so misappropriated and shall be punished under s. 943.20. If the prime contractor or subcontractor is a corporation, such misappropriation also shall be deemed theft by any officers, directors or agents of the corporation responsible for the misappropriation. Any of such misappropriated moneys which have been received as

was originally brought in 1971 and was founded upon conduct of the defendant, John T. Anderson, between January 26, 1968, and February 27, 1969. The complaint, after numerous motions, was amended and, as amended, was served on October 22, 1974. The amended complaint alleged that plaintiff, Paulsen Lumber, Inc., during this period at an agreed price sold and delivered building materials and supplies to Holiday Homes Construction Company, Inc., of which defendant Anderson was the principal managing officer. It was further alleged that payment for these materials was received by Anderson, but instead of using these payments to discharge the debt to Paulsen, Anderson used the funds for other purposes in violation of sec. 289.02(5), Stats. The plaintiff asked for judgment against Anderson in the amount the unpaid balance of $17,873.49.

The amended complaint alleged the four essential facts necessary to state a claim under sec. 289.02(5), Stats.: The purchase of the materials, their receipt, the payment for the materials by the owner or mortgagee of the property under construction, and the use for another purpose by the contractor of the trust fund intended for the satisfaction of the supplier's claims.

These essential elements of the civil claim of theft by contractor have been discussed by this court in *Weather-Tite Co. v. Lepper,* 25 Wis.2d 70, 130 N.W.2d 198 (1964), *Simonson v. McInvaille,* 42 Wis.2d 346, 166 N.W.2d 155 (1969), and *Burmeister Woodwork Co. v. Friedel,* 65

salary, dividend, loan repayment, capital distribution or otherwise by any shareholder of the corporation not responsible for the misappropriation shall be a civil liability of the shareholder and may be recovered from him and restored to the trust fund specified in this subsection by action brought by any interested party for that purpose. Until all claims are paid in full, have matured by notice and filing or have expired, such proceeds and moneys shall not be subject to garnishment, execution, levy or attachment."

Wis.2d 293, 222 N.W.2d 647 (1974). On each of these elements the plaintiff has the burden of proof.

Where the prime contractor is a corporation, the "misappropriation also shall be deemed theft by any officers, directors or agents of the corporation responsible for the misappropriation." Sec 289.02(5), Stats. The amended complaint was sufficient in its allegations to bring Anderson within the scope of the statute.

Despite the commencement of the action in 1971, it was not until May 19, 1976, a week before the scheduled trial date, that Paulsen served Anderson with a subpoena duces tecum ordering Anderson to produce at trial "[a]ll records, reports, files, and memoranda relating to the utilization of materials supplied by Plaintiff" at the job sites and during the period covered by the complaint. The subpoena specifically asked for:

". . . all memoranda and correspondence, and all records dealing with the sale of property into which Plaintiff's materials were incorporated, or the financing of [such] property . . . or any payments made to Holiday Homes, Inc., by any owner, together with the application of the proceeds from any such sale, financing, or payments."

At trial, Paulsen presented witnesses who gave testimony tending to prove that, at the times alleged in the complaint, John T. Anderson was an officer of Holiday Homes, that building materials upon orders placed by Anderson were delivered to the building sites, and that Paulsen was not paid. None of Paulsen's witnesses testified that the owners of the homes or the mortgagees made payments to the contractor. Nor was any attempt made to show that payments, if made, were misappropriated by Holiday Homes or by Anderson.

In the course of Paulsen's case in chief, Anderson was called as a witness pursuant to the subpoena duces tecum served a week earlier. In response to the subpoena, he produced some Paulsen Company invoices, but he did not

produce all of the papers and records demanded. He defended his failure to produce additional documents, stating that he did not have any of them and did not know who did. He said that he had left Holiday Homes in January of 1969, more than six years before. He testified that he had no recollection whether payment for the homes had been made to Holiday Homes by either the owner or mortgagee. In response to questioning by Paulsen's attorney, Anderson acknowledged that, when a home was built for a particular owner independently, Holiday Homes would ordinarily receive payment.

The subpoena did not specifically ask for any bank or savings and loan mortgage records, and Paulsen's counsel did not ask Anderson any questions in respect to the availability or whereabouts of those records. Bank or savings and loan mortgage records were never mentioned during the course of trial. Anderson's counsel did, however, report to the court that the Midland National Bank, which had been subpoenaed by Anderson, was unable to locate any records in respect to Holiday Homes' corporate account, because they were either buried in the archives or, alternatively, not available because the period of retention was only five years.

On this skeletal record, the case was submitted to the court. It found that all elements of the claim were proved with the exception of payment to Holiday Homes by its customers, the owners, or mortgagees.[2] Judgment was entered for the plaintiff.

To satisfy the deficiency in the plaintiff's case, the trial court explained in its memorandum opinion that it relied upon an evidentiary rule, which it stated to be:

[2] We conclude that the record is also deficient because of the failure to prove that defendant misappropriated the trust funds. In view of our disposition of this appeal, we need not pursue the appropriateness of the trial court's implicit, but unfounded, assumption that, if Paulsen was not paid, the funds were misappropriated.

"[W]here relevant, evidence could properly be a part of a case is within control of the party, and he fails to produce it without satisfactory explanation, the court or jury may draw an inference that such evidence would be unfavorable to him."

The court then assumed a fact not in evidence—that bank records which would show payments by owners or mortgagees were available to Anderson.

On the basis of the fact gratuitously supplied by the court and on the premise of the evidentiary rule stated, the court drew the inference that the bank records, if produced, would have been unfavorable to Anderson, *i.e.*, that they would have proven payment.[3]

We conclude that the court erred in its application of the "absent witness" rule and the corollary rule dealing with the nonproduction of documents when it gave more than persuasive or corroborative effect to the failure to produce evidence.

---

[3] We also point out that the application of the "withheld evidence" rule in respect to the production of a document requires a finding of several underlying facts. It must be determined that the withheld evidence was within the litigant's control and that failure to produce it was unreasonable. Moreover, even where the evidence is within the control of a party and the failure to produce it is without a satisfactory explanation, the inference which may arise is "open to explanation by circumstances which make some other hypothesis a more natural inference than the party's fear of exposure." *Schemenauer v. Travelers Indemnity Co.*, 34 Wis.2d 299, 308, 149 N.W.2d 644 (1967). *See also, Valiga v. National Food Co.*, 58 Wis.2d 232, 246, 206 N.W.2d 377 (1973); Wigmore, *Evidence*, Vol. II, sec. 285, p. 162. We have also held that no inference may be drawn when the evidence is equally available to either party to the litigation. *Valiga, supra,* at 247; *Learned v. Thompson*, 191 F.2d 409. In the instant case, it appears reasonable to conclude that, if the bank documents were available to Anderson, they were equally available to Paulsen. Under the facts of this case, it therefore appears doubtful that any inference adverse to Anderson should have been drawn.

■ The inference or "presumption," as it is sometimes called, is insufficient to supply a total failure of proof by the other party.

■ Even were the defendant's failure to produce the subpoenaed documents without adequate excuse, the resultant inference cannot be used to relieve the plaintiff of its obligation to establish a prima facie case.

■ Wigmore, *Evidence*, Vol. 2, sec. 290 (5), at 179–80 (3d ed. 1940), states:

"The opponent whose case is a denial of the other party's affirmation has no *burden of persuading the jury*. A party may legally sit inactive, and expect the proponent to prove his own case. Therefore, until the burden of producing evidence has shifted, the opponent has no call to bring forward any evidence, at all, and may go to the jury trusting solely to the weakness of the first party's evidence. Hence, though he takes a risk in so doing, yet his failure to produce evidence cannot at this stage afford any inference as to his lack of it; otherwise the first party would virtually be evading his legitimate burden."

■ McCormick, *Evidence*, sec. 272, at 658 (2d ed. 1972), states:

"One who has the burden of producing evidence of a fact in issue, cannot supply the lack of proof by relying on this 'presumption.' 'The extent of a party's right to invoke his opponent's failure to call an available witness, when such right exists, is to impair the value of the latter's proofs, and to give greater credence to the positive evidence of the former . . . .'"

These general principles of Wigmore and McCormick find expression in the cases of this court. In *Rudy v. Chicago, M., St. P. & P. R. Co.*, 5 Wis.2d 37, 47, 92 N.W. 2d 367 (1958), we said:

"Even, however, if we were to make all the necessary assumptions favorable to plaintiff, we conclude that the resulting inference would not be sufficient to sustain the finding, standing alone, but could be treated only as corroborative of other legally sufficient evidence.

"This inference 'does not operate to relieve the adverse party of the obligation of establishing his case.' 1 Jones, Evidence (4th ed.), p. 53, sec. 22; 2 Wigmore, Evidence (3d ed.), p. 179, sec. 290. The inference 'is persuasive rather than probative.' *Stocker v. Boston & M. R. R.* (1930), 84 N. H. 377, 379, 151 Atl. 457, 458, 70 A.L.R. 1320, and cases cited in annotation at page 1326."

*Carr v. Amusement, Inc.,* 47 Wis.2d 368, 376, 177 N.W. 2d 388 (1970), and *Ernst v. State,* 43 Wis.2d 661, 671, 170 N.W.2d 713 (1969), follow the precedent of *Rudy* in holding that the inference can only be treated as corroborative of other legally sufficient evidence and cannot serve to relieve a party of its burden of proof. Accordingly, the trial court erred as a matter of law when it relied entirely upon defendant's failure to produce the documents to supply the plaintiff's lack of proof.

Paulsen asserts that the inference was, however, properly applied in this case because there was testimony by Anderson that Holiday Homes customarily financed home construction by securing mortgage money financing from lending institutions. Paulsen appears to argue that the inference which the court drew from Anderson's failure to produce the bank documents is, therefore, corroborative of the routine business practice that mortgage money as paid to Holiday Homes. We think that the plaintiff misinterprets the effect of sec. 904.06 (1), Stats.[4]. The evidence relied on by Paulsen was rele-

---

[4] "Sec. 904.06 **Habit; routine practice.** (1) ADMISSIBILITY. Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the

vant under sec. 904.06(1) and, hence, admissible under sec. 904.02. But the purpose of sec. 904.06(1) is to set a standard for admissibility of evidence. It does not purport to define whether the evidence is sufficient. Where there is a lack of corroborating evidence of a business practice on the particular occasion, evidence of routine practice is not sufficient in itself. *French v. Sorano*, 74 Wis.2d 460, 465, 247 N.W.2d 182 (1976). In the instant case, there is no evidence corroborating the hypothesis that Holiday Homes was ever paid. There is no evidence to show that, in respect to the particular properties, Holiday Homes was paid by anyone. We conclude that the evidence of routine business practice was not probative of the fact of payment to Holiday Homes in the particular instances alleged. Moreover, it must be noted that the court relied completely upon the failure to produce the subpoenaed documents and not at all upon the alleged business-routine evidence.

The plaintiff at this late stage of the proceeding attempts to sustain its judgment by two circuitous inferences, neither one of which in itself is probative. We conclude that there has been a total failure to prove that Holiday Homes received payment from the mortgagees or from the owners of the homes built.

Additionally, Anderson claims that his answer was stricken because of his failure to comply with the subpoena issued by the court. He claims that he was entitled to a due-process hearing before that action could be taken. If, in fact, the trial court punitively struck the answer for failure to comply with the subpoena, Anderson was indeed entitled to a due-process hearing under the teaching of *Gipson Lumber Co. v. Schickling*, 56

___

presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

Wis.2d 164, 201 N.W.2d 500 (1972). We conclude, however, the answer was not stricken. Where that action is taken by a court, the result is a default judgment. Here, the decision demonstrates that the court considered the evidence presented and made its determination on the merits.

The merits were, we conclude, erroneously determined, because the court allowed the persuasive or corroborative inference that arose from Anderson's failure to respond to the subpoena to substitute for affirmative proof. The plaintiff failed to prove a prima facie case. The complaint must be dismissed because the evidence adduced was insufficient to prove the cause of action alleged.

*By the Court.*—Judgment reversed, and cause remanded with instruction to dismiss the complaint.