PATIENCE DRAKE ROGGENSACK, J.
¶ 1. We review a decision of the court of appeals[1] reversing the circuit court's order[2] affirming the jury's verdict, which found Speedway SuperAmerica, LLC (Speedway) liable for injuries James Kochanski sustained when he fell outside one of Speedway's stores. Speedway appealed, arguing that the circuit court erroneously gave the absent witness instruction, that the verdict should be reversed because it is contrary to the greater weight of the credible evidence, and that a new trial should be *11 granted in the interest of justice. The court of appeals reversed on the jury instruction issue and remanded for a new trial. It did not reach Speedway's other two arguments.
¶ 2. We affirm the decision of the court of appeals. The circuit court's decision to give the absent witness instruction was an erroneous exercise of discretion because there was no evidence in the record that the absent witnesses, former Speedway employees who had been on duty at the time of the accident, were material and within Speedway's control or that it was more natural for Speedway, rather than Kochanski, to call them. Furthermore, Speedway's decision not to call the former employees did not reasonably lead to the conclusion that it was unwilling to allow the jury to have "the full truth." Ballard v. Lumbermens Mut. Cas. Co., 33 Wis. 2d 601, 616, 148 N.W.2d 65 (1967). And finally, the instruction was prejudicial because without drawing a negative inference about Speedway's snow removal methods and processes from Speedway's decision not to call the former employees, the jury would not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability. Accordingly, we affirm the court of appeals' decision and remand for a new trial.
I. BACKGROUND
¶ 3. On February 6, 2007, Kochanski filled his car with gas at a Speedway convenience store in Milwaukee, Wisconsin. Between one half and two inches of snow had fallen that morning. When the machine at the pump would not process his credit card, Kochanski decided to pay for his purchase inside. As he approached the front door of the store, he noticed a yellow curb on either side of the door and a patch of snow in the *12 middle, which he assumed was a curb ramp to provide wheelchair access. The curb ramp was actually located four or five feet to his left. Having misjudged the ramp location, Kochanski either slipped or tripped on the curb, breaking his arm and injuring his wrist. He brought this suit in which he alleges that Speedway violated both its common law duty of care and the safe-place statute, Wis. Stat. § 101.11 (2009-10).[3]
¶ 4. At a May 2011 jury trial, Kochanski proffered the following evidence in support of his claims: (1) his own testimony regarding the circumstances of the fall; (2) video footage from the store's surveillance camera that captured the fall; (3) deposition testimony of his treating physician regarding his injuries; (4) testimony of his wife regarding the impact the accident had on her and her husband's lives; and (5) Speedway's interrogatory responses that identified five former employees who were on duty at the time of the accident and provided their last known addresses.
¶ 5. In defending against the imposition of liability, Speedway relied on the video that captured the fall. Speedway explained to the jury that it had been unsuccessful in its attempt to locate the manager on duty at the time of the accident, but no testimony was necessary because the video was sufficient to prove that it was not liable.
¶ 6. Based on Speedway's decision not to call any former employees as witnesses, Kochanski requested, and the court gave, the absent witness instruction, which provides:
If a party fails to call a material witness within [its] control, or whom it would be more natural for that *13 party to call than the opposing party, and the party fails to give a satisfactory explanation for not calling the witness, [the jury] may infer that the evidence which the witness would give would he unfavorable to the party who failed to call the witness.
Wis JI — Civil 410. The court reasoned that the jury had a right to know about Speedway's snow removal methods and processes. It explained that since Speedway did not call former or current employees who would have known about those methods and processes and the video did not show whether the premises was salted before the accident, the instruction was proper.
¶ 7. During closing arguments, Kochanski's attorney capitalized on the instruction, arguing as follows:
The law says — and you've taken an oath to follow the law — that if there is a witness that would have been natural for SuperAmerica to call to explain to you what was done on this day, you can infer that had they called that witness, they would have gotten some unfavorable testimony.
Why didn't [Speedway] call anybody? What would that unfavorable testimony have been? Other evidence that's missing in this case... .
Not a single document, and not [a] single witness. It makes you wonder what's going on[.] What is it that's being decided at the highest levels of SuperAmerica? How will they defend these cases? Why don't you get to hear the whole story?
¶ 8. The jury returned a verdict in favor of Kochanski and awarded the plaintiffs $317,545.58 in damages, which represented Kochanski's medical expenses and pain and suffering, as well as Cynthia Kochanski's loss of society and companionship. The circuit court affirmed the verdict and denied Speedway's request for a new trial.
*14 ¶ 9. On appeal, Speedway argued that the circuit court erroneously gave the absent witness instruction. Specifically, it said that the missing witnesses were not material because their testimony would have been cumulative of the video and that it is not necessarily more natural for defendant-employer to call former employees. The court of appeals agreed[4] with Speedway that the record lacked the facts necessary to give the absent witness instruction. We granted review and now affirm the court of appeals.
II. DISCUSSION
A. Standard of Review
¶ 10. A circuit court has broad discretion to instruct a jury. Nommensen v. Am. Cont'l Ins. Co., 2001 WI 112, ¶ 50, 246 Wis. 2d 132, 629 N.W.2d 301. This does not mean, however, that a jury instruction is insulated from review. Facts of record must support the instruction and the instruction must correctly state the law. Id. We independently review whether these two criteria are met. State v. Fonte, 2005 WI 77, ¶ 9, 281 Wis. 2d 654, 698 N.W.2d 594.
¶ 11. The correctness of the jury instruction affects the validity of a jury's verdict. State v. Dodson, 219 Wis. 2d 65, 87, 580 N.W.2d 181 (1998). However, an "erroneous jury instruction warrants reversal and a *15 new trial only if the error was prejudicial." Fischer v. Ganju, 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992). An error is prejudicial when it probably misled the jury. Id. at 850. Put another way, "an error relating to the giving or refusing to give an instruction is not prejudicial if it appears that the result would not be different had the error not occurred." Lutz v. Shelby Mut. Ins. Co., 70 Wis. 2d 743, 751, 235 N.W.2d 426 (1975).
B. Absent Witness Instruction
¶ 12. Over a century ago, the United States Supreme Court issued a definitive statement of the absent witness rule: "[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Graves v. United States, 150 U.S. 118, 121 (1893); Herbert v. Wal-Mart Stores, Inc., 911 F.2d 1044, 1046 (5th Cir. 1990). As with the best evidence rule[5] and the spoliation doctrine,[6] the absent witness rule is based on the notion that:
[t]he failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so; and this *16 fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.
2 John Henry Wigmore, Evidence in Trials at Common Law § 285, at 192 (James H. Chadbourn rev. 1979); Robert H. Stier, Jr., Revisiting the Missing Witness Inference — Quieting the Loud Voice from the Empty Chair, 44 Md. L. Rev. 137, 139-43 (1985).
¶ 13. However, contrary to the language of Graves, the instruction does not create a presumption; it describes a permissible inference. Booth v. Frankenstein, 209 Wis. 362, 370, 245 N.W. 191 (1932); 2 McCormick on Evidence § 264, at 322 (Kenneth S. Broun ed., 7th ed. 2013). The instruction allows jurors to decide whether it was more natural for one party to call a material witness who was within that party's control than for the other party to call the witness and whether the witness' absence was satisfactorily explained.[7] Furthermore, a court may give the instruction only if there are facts in the record that would allow the jury to reasonably draw a negative inference from the absence of a particular material witness.[8] Thoreson v. Milwaukee & Suburban Transp. Corp., 56 Wis. 2d 231, 237, 201 N.W.2d 745 (1972); see also State v. Glenn, 199 Wis. 2d 575, 585, 545 N.W.2d 230 (1996) (instruction on lesser-included offense proper only when there is evidence to support it). *17 In other words, materiality, control, and reasonableness of the inference are threshold requirements. We now examine these requirements individually.
1. Materiality
¶ 14. A material witness is one "capable of supplying information of strong probative value for the party's case." Thoreson, 56 Wis. 2d at 237 (quoting Dodge v. Dobson, 21 Wis. 2d 200, 205, 124 N.W.2d 97 (1963) (internal quotation marks omitted)). One cannot assume that a witness has such information. Id. (citing Ballard, 33 Wis. 2d 601). Rather, the record must show that the witness' relationship to the issues in the case is such that the witness is capable of producing material testimony. For instance, when a witness' own conduct is at issue in a civil trial, the witness is usually material. E.g., Coney v. Milwaukee & Suburban Transp. Corp., 8 Wis. 2d 520, 527-28, 99 N.W.2d 713 (1959) (instruction was proper when the defendant transportation company failed to call the driver of its trolley bus, and the driver's negligence was at issue). The same holds true when the witness' job required him or her to make an assessment relevant to the claim. E.g., Schemenauer v. Travelers Indem. Co., 34 Wis. 2d 299, 308-09, 149 N.W.2d 644 (1967) (instruction was proper when the defendant claimed amnesia, which was relevant to his credibility but not necessary to his claim, and failed to call his treating physician); Dodge, 21 Wis. 2d at 205 (instruction was proper when the extent of the plaintiffs injuries was at issue and she did not call her treating physician); DeChant v. Monarch Life Ins. Co., 204 Wis. 2d 137, 149-50, 554 N.W.2d 225 (Ct. App. 1996) (instruction was proper in a bad-faith insurance *18 action when the defendant failed to call its field agent who assessed the plaintiffs claim).
¶ 15. A party also may show that the absent witness has material information through other foundational evidence. For example, in Carr v. Amusement, Inc., 47 Wis. 2d 368, 177 N.W.2d 388 (1970), the intoxication of a slip and fall plaintiff was at issue. When the plaintiff did not call his wife, with whom he had been sitting at the same end of the bar,[9] the court properly gave the instruction because "the wife could have produced testimony relevant to the events that occurred while she was with her husband at the bar, specifically including how much alcohol he had consumed." Id. at 376.
¶ 16. When there is no evidence that a witness could supply material information, the instruction is improper. Thoreson provides a good example. In that case, a transportation company failed to call a passenger who was riding on a bus that struck a child who ran into its path. The court explained that the instruction was improper because "[w]e cannot assume the bus passenger was a material witness; he may or may not have seen the accident." Thoreson, 56 Wis. 2d at 237. Similarly, in Ballard, we affirmed a refusal to give the instruction when an injured plaintiff did not call her chiropractor because it was not "clear from the record" that she saw the chiropractor for injuries she sustained in the accident. Ballard, 33 Wis. 2d at 614-15. We also held that a party's mere assertion that a witness has material information is insufficient to support giving the instruction. Id. at 615.
*19 ¶ 17. Additionally, even a witness capable of supplying relevant information will not support giving the missing witness instruction if that information would be merely cumulative. Featherly v. Cont'l Ins. Co., 73 Wis. 2d 273, 282-83, 243 N.W.2d 806 (1976) (testimony of the plaintiffs reconstruction expert would have been "superfluous in light of other evidence"); Karl v. Emp'rs Ins. of Wausau, 78 Wis. 2d 284, 300, 254 N.W.2d 255 (1977) (testimony of the plaintiffs family physician would have been cumulative in light of a psychiatrist's testimony).
2. More natural for one party to call a witness
¶ 18. As to the second requirement, that a witness be peculiarly within one party's control or that it be more natural for one party to call a witness than the other party, courts "cannot assume the witness was more available to" one party than another.[10] Thoreson, 56 Wis. 2d at 238. That it was "more natural" for one of the parties to have called an absent witness is grounded in the concept that one party had more control over the witness than the other party. McGowan v. Story, 70 Wis. 2d 189, 200, 234 N.W.2d 325 (1975). We have held that it is improper to give the absent witness instruction when the witness is equally available to both parties. Capello v. Janeczko, 47 Wis. 2d 76, 84-85, 176 N.W.2d 395 (1970).
*20 3. Absence/Inference relationship
¶ 19. Finally, the instruction is proper only when the failure to call a witness reasonably leads to the conclusion that "the party is unwilling to allow the jury to have the full truth." Ballard, 33 Wis. 2d at 615-16. This requirement is satisfied when a party does not satisfactorily explain its failure to call a material witness that is peculiarly within its control. We require that factual foundation to prevent a party from "having] the burden, at his peril, of calling every possible witness to a fact, lest his failure to do so will result in an inference against him." Id. at 615.
¶ 20. Satisfaction of all three requirements is important because the instruction has significant "potential [for] inaccuracy and unfairness." Stier, supra, at 151, 153 ("qualifications on the use of the rule are intended to limit its application to those situations in which the inference has a basis in fact"). Assumptions upon which the instruction is based are not always true. For example, the inference assumes that a party intentionally fails to produce evidence, yet "such an intention is not clear from the mere absence of evidence in court." Id. at 145. Even if a party intentionally fails to call a witness, its decision is not necessarily the product of "fear that weaknesses in the case will be exposed" or a nefarious desire to hide evidence. Id.
¶ 21. Moreover, modern rules of procedure and evidence[11] create mechanisms by which to accomplish the rule's objectives without the risk of "add[ing] a *21 fictitious weight to one side or another of the case." Burgess v. United States, 440 F.2d 226, 234 (D.C. Cir. 1970); Herbert, 911 F.2d at 1048 (Federal Rules of Evidence and Federal Rules of Civil Procedure "renderQ the uncalled-witness rule an anachronism.").
¶ 22. These concerns have led courts and lawmakers to increasingly limit, and in some instances eliminate, the instruction. Stier, supra, at 151; see also Conn. Gen. Stat. § 52-216c (eliminating the instruction in civil cases); Herbert, 911 F.2d at 1047 ("the uncalled-witness rule has no place in federal trials"). Accordingly, we reiterate that facts in the record, not assumptions or speculation, must establish materiality, control, and the reasonableness of a negative inference before the instruction may be given.
C. Application
¶ 23. As the court of appeals correctly concluded, the record in the present case lacks factual evidence necessary to uphold the circuit court's decision to give the absent witness instruction. Starting with materiality, Kochanski presented no evidence that the former Speedway employees on duty at the time of Kochanski's fall had information of strong probative value. Just as the court could not presume a bus passenger saw the accident in Thoreson, we cannot presume that employees on duty at the time of Kochanski's fall could testify about Speedway's snow removal methods and processes or what was done that day. See Thoreson, 56 Wis. 2d at 237. Speedway's witness list indicates that it hired a contractor to provide snow removal services.
*22 ¶ 24. As to the circuit court's assertion that current employees could testify about Speedway's snow removal methods and processes, the record does not contain facts that show that a particular current employee could provide information "of strong probative value" on that point. Dodge, 21 Wis. 2d at 205. Additionally, Kochanski did not argue to the circuit court that the instruction was proper based on Speedway's failure to call current employees. The circuit court appears to have constructed that theory, prior to the close of trial, based on pure speculation. This had the effect of improperly placing a burden on Speedway to call "possible witness [es] to a fact, lest [its] failure to do so will result in an inference against [it]." Ballard, 33 Wis. 2d at 615.
¶ 25. Next, Kochanski did not establish that the former employees were peculiarly under Speedway's control or that it was more natural for Speedway to call former employees than for Kochanski to call them. The circuit court reasoned that it was more natural for Speedway to call its former employees because Speedway did not effectively prove that the absent witnesses were ex-employees and that "[f]or all [the court] know[s], they're currently employed in a different SuperAmerica." It also found that even if the witnesses were ex-employees, they still had a special relationship with Speedway because "[e]x-employees... have to obtain letters of recommendation for future employers from their former employer" and there is a possibility that "the manager may be on a pension or a deferred pension." These findings are clearly erroneous. State v. Arias, 2008 WI 84, ¶ 12, 311 Wis. 2d 358, 752 N.W.2d 748. The record lacks any evidence that the uncalled witnesses were working at a different Speedway, that they had contacted Speedway for letters of recommendation, or that the manager was drawing a pension from Speedway.
*23 ¶ 26. Additionally, Kochanski read the names and addresses of the former employees into the record, so their whereabouts were known to him. Kochanski had obtained these names and addresses through Speedway's answers to his interrogatories, yet he made no showing that he could not compel their appearance at trial by subpoena. The safe-place claim was Kochanski's to prove; it was not Speedway's obligation to disprove it.
¶ 27. The absent witness instruction allows for a negative inference in order to encourage parties to present, not conceal, relevant evidence. Herbert, 911 F.2d at 1046. However, "the substance of a witness' testimony is uncertain." Stier, supra, at 145. This uncertainty is too great to allow for a negative inference when an absent witness' relationship to a party is not predictive of the witness' testimony. Without evidence that former employees were in the control of or indebted to Speedway, there is no reason to conclude that their testimony would naturally favor one party or the other.
¶ 28. Speedway chose to defend its liability with surveillance footage of the accident, which it believed was sufficient to prove that it was not liable for Kochanski's injuries. It explained that it did not call the manager on duty at the time of the accident because he could not be located at his last known address, which was that of his parents who had not heard from him in some time. Kochanski provided no evidence that called the truthfulness of Speedway's explanation into question. Kochanski provided no factual foundation in the record from which it reasonably could be concluded that there existed a relationship between the former employees' absences and the inference that their testimony would have been unfavorable to Speedway.
¶ 29. Having concluded that the circuit court's decision to give the instruction was erroneous; we must *24 next decide if it was prejudicial. This requires an understanding of the substantive law that underlies Kochanski's claims.
D. Kochanski's Substantive Claims
¶ 30. Kochanski's complaint alleges both common law negligence and safe-place claims. The sole question regarding liability reads as follows: "Was Speedway SuperAmerica LLC, through the acts of its employees, negligent in failing to maintain the Speedway Super-America premises as safe as its nature would reasonably permit on February 6, 2007?"[12]
¶ 31. The special verdict question on liability is problematic because common law negligence and the safe-place statute involve different standards of care and different elements of proof.[13] With a negligence claim, a defendant is liable when he has a duty of ordinary care that he breaches and the breach is a cause *25 of damage to the plaintiff. Hoida, Inc. v. M&I Midstate Bank, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17. However, with a safe-place claim, an employer or owner of a public building has a duty to maintain the building as safely as its nature will reasonably permit. Wis. Stat. § 101.11(1); Megal v. Green Bay Area Visitor & Convention Bureau, Inc., 2004 WI 98, ¶ 22, 274 Wis. 2d 162, 682 N.W.2d 857.
¶ 32. In order to be subject to the higher standard of care under the safe-place statute, a defendant must have actual or constructive notice that an unsafe condition or defect exists. Megal, 274 Wis. 2d 162, ¶ 11. Constructive notice is a fiction that attributes knowledge of a fact to a person "as if he had actual notice or knowledge although in fact he did not." Strack v. Great Atl. & Pac. Tea Co., 35 Wis. 2d 51, 54-55, 150 N.W.2d 361 (1967).
¶ 33. In Megal, we explained constructive notice further:
In the context of an alleged safe-place violation, the general rule is that an employer or owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it. Ordinarily, constructive notice requires evidence as to the length of time that the condition existed.
The length of time required for the existence of a defect or unsafe condition that is sufficient to constitute constructive notice depends on the surrounding facts and circumstances, including the nature of the business and the nature of the defect. We have carved out a *26 limited exception to the general rule that temporal evidence is required before constructive notice can arise....
[W]hen an unsafe condition, although temporary or transitory, arises out of the course of conduct of the owner or operator of a premises or may reasonably be expected from his method of operation, a much shorter period of time, and possibly no appreciable period of time under some circumstances, need exist to constitute constructive notice.
Megal, 274 Wis. 2d 162, ¶¶ 12-13 (internal citations and quotations omitted).
¶ 34. As explained above, it is the "general rule . . . that constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation." May v. Skelley Oil Co., 83 Wis. 2d 30, 36, 264 N.W.2d 574 (1978). In addition, "constructive notice [usually] cannot be found when there is no evidence as to the length of time the condition existed." Kaufman v. State St. Ltd. P'ship, 187 Wis. 2d 54, 59, 522 N.W.2d 249 (Ct. App. 1994). However, when it is reasonably probable that an unsafe condition will occur because of the nature of the business, or the manner in which the owner conducts the business, a much shorter period of time may support constructive notice. Strack, 35 Wis. 2d at 55.
¶ 35. Accordingly, if a plaintiff who alleges a safe-place violation cannot prove actual notice of an unsafe condition, or the length of time the unsafe condition existed sufficient to support constructive notice, he or she must prove constructive notice by offering evidence *27 of "the nature of the business, the nature of the [unsafe condition], and the public policy involved" so that the jury could find that the defendant's methods and processes would reasonably be expected to give rise to the unsafe condition. May, 83 Wis. 2d at 37.[14]
¶ 36. Speculation as to how long the unsafe condition existed and what reasonable inspection would entail are insufficient to establish constructive notice. Megal, 274 Wis. 2d 162, ¶ 20 (defendant did not have constructive notice of french fry on which plaintiff slipped because plaintiff provided no "testimony about the usual management and maintenance of a 61,000 square-foot public building" or what is "reasonable to expect for the management of such a facility").[15]
¶ 37. Furthermore, given the weather that often occurs in February in Wisconsin, standing alone, a temporary natural accumulation of snow is insufficient to provide notice of an unsafe condition under the safe-place statute. See Bersch v. Holton St. State Bank, *28 247 Wis. 261, 262, 19 N.W.2d 175 (1945) (concluding that wet floor caused by snow tracked into bank while it was snowing did not support liability because constant floor mopping was not required). The safe-place statute does not make employers and owners insurers of frequenters. Megal, 274 Wis. 2d 162, ¶ 9.
¶ 38. Special verdict question no. 1, the question directed to Speedway's liability, asked the jury to determine whether Speedway violated the higher standard of care required by the safe-place statute because it asked whether Speedway made the "premises as safe as its nature would reasonably permit on February 6, 2007."[16] Therefore, in order to find in Kochanski's favor, the jury had to find that Speedway had notice, actual or constructive, of the allegedly unsafe condition because notice is a required predicate for a safe-place claim. Topp v. Cont'l Ins. Co., 83 Wis. 2d 780, 789, 266 N.W.2d 397 (1978); see also Gerdmann v. United States Fire Ins. Co., 119 Wis. 2d 367, 371, 350 N.W.2d 730 (Ct. App. 1984) (concluding that the determination of whether the owner had notice of an unsafe condition is generally a jury question).
¶ 39. It was Kochanski's burden to "make a showing sufficient to establish the existence of a[ll] elementes] essential" to his safe-place claim, here notice of an unsafe condition that caused injury. Transp. Ins. Co. *29 v. Hunzinger Constr. Co., 179 Wis. 2d 281, 290-92, 507 N.W.2d 136 (Ct. App. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). However, Kochanski presented no evidence that Speedway did not have satisfactory snow removal methods and processes or that it had satisfactory snow removal methods and processes but did not follow them. The jury had Speedway's surveillance video that showed the yellow curb clearly visible through a light accumulation of snow on the walkway where Kochanski fell. Therefore, the jury likely coupled the video with the negative inference from the jury instruction, as urged by counsel for Kochanski, to find that Speedway had constructive notice of an unsafe condition. We next examine prejudice.
E. Prejudice
¶ 40. When properly used, the absent witness instruction will not "act as a substitute for affirmative proof' but rather, will be "used by the jury in weighing the evidence actually produced." Zuber v. N. Pac. Ry. Co., 74 N.W.2d 641, 650 (Minn. 1956). To hold otherwise would cause the instruction to operate as a presumption rather than as an inference.
¶ 41. Normally, a party seeking relief must produce evidence to satisfy each element of his claim and bear the risk of non-persuasion. Fleming James, Jr., Burdens of Proof, 47 Va. L. Rev. 51, 51 (1961). However, when one party has evidence within its exclusive control, a presumption in favor of the other party may be appropriate. Francis H. Bohlen, The Effect of Rebuttable Presumptions of Law Upon the Burden of Proof, 68 U. Pa. L. Rev. 307, 314 (1920) (presumptions arise when *30 there is a "need [to] relax[] the stringency of the proof," such as when "the power to produce evidence of the fact on which the litigant's rights depend is exclusively in the power of [his or her] opponent"). These concepts inform our prejudice analysis.
¶ 42. A party cannot rely on the inference from the missing witness instruction to satisfy a necessary element of proof for that party's claim. Paulsen Lumber, Inc. v. Anderson, 91 Wis. 2d 692, 699, 283 N.W.2d 580 (1979) (concluding that "[e]ven were the defendant's failure to produce the subpoenaed documents without adequate excuse, the resultant inference cannot be used to relieve the plaintiff of its obligation to establish a prima facie case"). Therefore, an erroneously given absent witness instruction is prejudicial when a party with the burden of proof uses the inference from the instruction to provide factual proof for an element of a claim. Id.; Zuber, 74 N.W.2d at 650.
¶ 43. An erroneously given absent witness instruction misleads jurors when it allows them to find that a party has satisfied an element of a claim when it has not. In other words, an erroneously given absent witness instruction is prejudicial when the jury could not have found that the party requesting the instruction proved all of the elements of his or her claim without drawing the inference that a party has prevented the jury from having "the full truth." Paulsen Lumber, 91 Wis. 2d at 698-99; Ballard, 33 Wis. 2d at 616. That is precisely what happened in the present case.
¶ 44. • Without inferring from Speedway's decision not to call former employees as witnesses that its snow removal methods and processes could reasonably be *31 expected to give rise to an unsafe condition or that there were satisfactory methods and processes but the employees did not follow them, the jury would not have found that Kochanski satisfied the notice element of his safe-place claim. Kochanski provided no evidence that Speedway had actual notice of an unsafe condition based solely on the video showing a light accumulation of snow. Cf. Hannebaum v. Direnzo & Bomier, 162 Wis. 2d 488, 500, 469 N.W.2d 900 (Ct. App. 1991) (slip and fall defendants who asked arriving clients about continuing weather conditions two-and-one-half hours after their agent salted had actual notice of icy conditions).
¶ 45. Kochanski also offered no evidence as to how long the alleged unsafe condition existed. His testimony that a Speedway employee applied salt to the walkway after his fall does not establish the length of time that the snow, which Kochanski alleged concealed the curb, contrary to the video depiction, was a dangerous condition before the accident. Nor does the weather record from Milwaukee Mitchell Airport, which Speedway used to dispute the amount of snow accumulation, establish a dangerous condition at the particular Speedway store where the accident occurred. Having submitted special verdict question no. 1 that asked the jury whether Speedway made the "premises as safe as its nature would reasonably permit," which describes the standard of care under the safe-place statute, and without proving actual notice of an unsafe condition or the length of time the allegedly unsafe condition existed, Kochanski had to prove constructive notice to succeed on liability.[17]
*32 ¶ 46. Instead of subpoenaing or deposing the former employees who were working at the time of his fall and questioning them about any snow removal methods and processes Speedway may have had in place at that time, Kochanski's attorney took another route. At trial, he had a member of his staff read Speedway's interrogatory responses that identified the former employees and provided their last known addresses into the record. He then requested the absent witness instruction and after it was given, he argued:
The law says ... you can infer that had they called that witness, they would have gotten some unfavorable testimony.
Why didn't [Speedway] call anybody? What would that unfavorable testimony have been?
It makes you wonder what's going on[.] What is it that's being decided at the highest levels of Super-America? .. . Why don't you get to hear the whole story?
In essence, he told the jury that despite the lack of any evidence as to Speedway's snow removal methods and *33 processes, the jury should infer notice from Speedway's failure to call any employees as witnesses.
¶ 47. However, we already have decided that providing proof necessary to a plaintiffs claim is not a proper function of the missing witness instruction. Paulsen Lumber, 91 Wis. 2d at 699. If Kochanski could not establish actual notice or the length of time the defect existed, he should have produced evidence that Speedway's methods and processes could either reasonably have been expected to give rise to an unsafe condition or that Speedway had satisfactory methods and processes, but they were not followed. Kochanski did neither.
¶ 48. To allow the absent witness instruction to substitute for evidence in this manner would subvert the requirement that a plaintiff prove notice in a safe-place claim. Accordingly, we conclude that the erroneous giving of the absent witness instruction was prejudicial, and we affirm the decision of the court of appeals.
III. CONCLUSION
¶ 49. We conclude that the circuit court's decision to give the absent witness instruction was an erroneous exercise of discretion because there was no evidence in the record that the absent witnesses, former Speedway employees who had been on duty at the time of the accident, were material and within Speedway's control or that it was more natural for Speedway, rather than Kochanski, to call them. Furthermore, Speedway's decision not to call the former employees did not reasonably lead to the conclusion that it was unwilling to allow the jury to have "the full truth." Ballard, 33 Wis. 2d at 616. And finally, the instruction was prejudicial because with *34 out drawing a negative inference about Speedway's snow removal methods and processes from Speedway's decision not to call the former employees as witnesses, the jury would not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability. Accordingly, we affirm the court of appeals' decision and remand for a new trial.
By the Court. — The decision of the court of appeals is affirmed.

 Kochanski v. Speedway SuperAmerica, LLC, No. 2011AP1956, unpublished slip op. (Wis. Ct. App. Sept. 18, 2012).

 The Honorable Judge John Siefert of Milwaukee County presided.

 All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 Judge Fine filed a dissenting opinion in which he concluded that the instruction was appropriate because Speedway did not prove "via evidence" that the former employees were not within its control or that it had a satisfactory reason for not calling them.

 The best evidence rule provides that "[t]o prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided ... by ... statute." Wis. Stat. § 910.02.

 The spoliation doctrine allows a fact-finder to draw a negative inference against a party who destroys relevant documents. Jamie S. Gorelick et al., Destruction of Evidence § 2.1, at 32 (1989).

 Whether a witness is material is a question of law. Jessica J.L. v. State, 223 Wis. 2d 622, 629, 589 N.W.2d 660 (Ct. App. 1998).

 We say "particular" witness because a court cannot determine if the witness is material, if it is more natural for one party to call the witness, or if a failure to call the witness supports a negative inference without first identifying that witness. In other words, these evaluations cannot be made in the abstract.

 Appendix to Brief of Plaintiff-Appellant at 153, Carr v. Amusement, Inc., 47 Wis. 2d 368, 177 N.W.2d 388 (1970) (citing Transcript of Record at ¶ 297).

 Because Kochanski does not argue that the absent witnesses were within Speedway's control, we focus on the "more natural" prong of this requirement.

 "If discovery is available but not employed, the party ought not to be allowed to resort to the somewhat speculative *21 inference when discovery would substitute certainty." McCormick, supra, at 320 n.19 (citing Jenkins v. Bierschenk, 333 F.2d 421, 425 (8th Cir. 1964)).

 Special verdict question no. 1.

 Compare Sturm v. Simpson's Garment Co., 271 Wis. 587, 74 N.W.2d 137 (1956). In that case, the plaintiff pleaded both safe-place and ordinary negligence violations. The special verdict questions on the safe-place claim and the negligence claim were separated as follows:
Question 1: Did defendant Simpson's Garment Company fail to have the platform here in question as free from danger to frequenters as the nature of the premises would reasonably permit? . . .
Question 3: Was defendant Simpson's Garment Company, at or about the time and place of the accident, negligent in failing to furnish a mat to cover the platform here in question?
Id. at 589.

 See, e.g., Steinhorst v. H. C. Prange Co., 48 Wis. 2d 679, 684, 180 N.W.2d 525 (1970) (constructive notice satisfied when slip and fall plaintiff introduced evidence that a defendant retail store's self-service display of shaving cream led to spills on the floor on at least five previous occasions and that 15 minutes before the accident, a store clerk observed "boys playing around" with the display); Strack v. Great Atl. & Pac. Tea Co., 35 Wis. 2d 51, 55-56, 150 N.W.2d 361 (1967) (defendant grocery store charged with constructive notice when its method of operating a self-service fruit display caused an unsafe condition).

 See also Kaufman v. State St. Ltd. P'ship, 187 Wis. 2d 54, 522 N.W.2d 249 (Ct. App. 1994) (defendant did not have constructive notice of a banana on which plaintiff slipped because there was no evidence that defendant did or did not do something to create the unsafe condition).

 Special verdict question no. 1 limits inquiry to the acts of Speedway's employees. However, an owner can violate the safe-place statute in other ways. See Megal v. Green Bay Area Visitor & Convention Bureau, Inc., 2004 WI 98, ¶ 9, 274 Wis. 2d 162, 682 N.W.2d 857 (citing Gross v. Denow, 61 Wis. 2d 40, 47, 212 N.W.2d 2 (1973)) ("safe-place statute addresses unsafe conditions, not negligent acts"). Because special verdict question no. 1 asked whether the premises was as safe as its nature would reasonably permit, the jury had to find that all of the requirements of a safe-place claim were met.

 There is an additional exception to the notice requirement under the safe-place statute. When a defect is structural, meaning it "arises by reason of the materials used in construc *32 tion or from improper layout or construction," no notice is required. Mair v. Trollhaugen Ski Resort, 2006 WI 61, ¶ 22, 291 Wis. 2d 132, 715 N.W.2d 598 (quoting Barry v. Emp'rs Mut. Cas. Co., 2001 WI 101, ¶ 28, 245 Wis. 2d 560, 630 N.W.2d 517) (internal quotation marks omitted)).
This exception does not apply. While Kochanski testified that he expected the curb's ramp location to be directly in front of the door and Speedway argued that "Kochanski's defense concerning . .. contributory negligence was that the curb opening was in the wrong place," Kochanski never made the legal argument that a structural defect caused his fall. To be sure, if Kochanski intended to argue the curb's location was a structural defect, he would have objected when Judge Siefert gave the latter portion of Wis JI — Civil 1900.04, which instructs the jury that they must find notice.