LANDREY, Appellant, v. UNITED SERVICES AUTOMOBILE ASSOCIATION and another, Respondents.

*No. 223. Argued November 5, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 407.)

For the appellant there were briefs and oral argument by *Anthony J. Melo* of Milwaukee.

For the respondents there was a brief by *Wickham, Borgelt, Skogstad & Powell*, attorneys, and *Robert C. Watson* of counsel, all of Milwaukee, and oral argument by *Mr. Watson*.

BEILFUSS, J. The pedestrian's principal contention is that the 80 percent apportionment of causal negligence attributed to him by the jury is not supported by the evidence.

Basic rules of law that need no citation are that the jury's answers to questions of the verdict will not be changed or set aside if there is any credible evidence in the record, or reasonable inferences therefrom, that under any reasonable view support the answer under consideration; that the apportionment of causal negligence is peculiarly within the province of the jury and will not be set aside unless is can be said as a matter of law that the negligence of one party exceeded that of another, or that percentages are grossly disproportionate in view of the facts.

The accident occurred at the intersection of North Oakland Avenue and East Locust Street in the city of Milwaukee on January 11, 1968, at about 12:10 a. m. Oakland Avenue runs generally north and south and intersects Locust Street at an angle of 90 degrees. Traffic at the intersection is controlled by automatic traffic lights.

The plaintiff-pedestrian approached the intersection from the north, walking south on the west side of Oakland Avenue. When he reached the intersection the traffic signal was red for the traffic on Oakland Avenue and he

stopped to wait for the light to change. The defendant-driver also approached the intersection from the north, driving south on Oakland Avenue. The defendant intended to make a right turn to proceed west on Locust Street and he, too, stopped and waited for the light to change.

The light turned green for traffic on Oakland Avenue and simultaneously the "Walk" signal went on for pedestrians. The accident occurred while plaintiff was crossing the street and defendant-driver was negotiating his right turn.

The plaintiff testified that he waited on the corner until the light changed and then started across the street almost immediately. After he had proceeded about 10 feet across the street he realized that defendant-driver was turning right and he tried to push himself away from the fender of the car. He yelled for defendant to stop but he kept turning and knocked the plaintiff to the ground where he struck his right shoulder causing the injuries complained of. Plaintiff stated that he did not notice the defendant's auto until it was about to strike him.

The defendant-driver testified that he observed the plaintiff standing on the corner "weaving" while he was waiting for the light to change. When the light changed the plaintiff turned and looked back at him and he nodded for the plaintiff to go ahead and cross. However, the plaintiff turned around and just stood where he was. The defendant started to inch forward and when his car was even with the crosswalk he turned and looked at the plaintiff again. The plaintiff still had not moved from where he was standing and so the defendant looked back at the road and began to make his turn. Just as he started the turn he looked at the plaintiff for a third time and saw that he had not moved at all. When he was about one-half to three-fourths of the way through the crosswalk which runs across Locust Street he heard a

"thud" and a yell. He immediately stopped his car, got out and walked around the rear end and found the plaintiff seated on the pavement.

A witness, Thomas Lee Borck, was stopped in his auto on Locust Street, facing east at the intersection waiting for the light to change. He observed both plaintiff and defendant-driver. He testified that after the light changed the defendant's car started first and had proceeded about one-quarter through its turn when the plaintiff stepped off the curb and walked into the front right side of the car.

The plaintiff testified that the point of impact was about 10 feet away from the curb. However, the police officer who investigated the accident testified that his findings indicated that the point of impact was approximately three-and-one-half feet from the curb. Both the defendant-driver and the witness, Borck, testified that the defendant stopped his car immediately when the impact occurred, and that it was about three or four feet from the curb.

The plaintiff-appellant relies on sec. 346.23 (1), Stats., which reads:

"At an intersection or crosswalk where traffic is controlled by traffic control signals or by a traffic officer, the operator of a vehicle shall yield the right of way to a pedestrian crossing or who has started to cross the highway on a green or 'WALK' signal and in all other cases pedestrians shall yield the right of way to vehicles lawfully proceeding directly ahead on a green signal. . . ."

This statute and its companion section dealing with crossing at uncontrolled intersections or crosswalks (sec. 346.24, Stats.) are safety statutes, and their violation constitutes negligence as a matter of law. *Callahan v. Van Galder* (1958), 3 Wis. 2d 654, 658, 89 N. W. 2d 210. However, they do not give a pedestrian the absolute right to step off the curb at any time. The question of whether

a pedestrian has the right-of-way or, in the language of sec. 346.23 (1), is "crossing" or "has started to cross" the street, is a factual determination to be made by the trier of fact, as is the question of the causal effect of a plaintiff pedestrian's contributory negligence. *See Callahan v. Van Galder, supra; Pingel v. Thielman* (1963), 20 Wis. 2d 246, 121 N. W. 2d 749; *Raabe v. Brzoskowski* (1931), 204 Wis. 319, 236 N. W. 133. Even if the pedestrian has the right-of-way he cannot walk into apparent danger without being negligent.

The evidence presented at the trial was in conflict as to how this accident occurred. According to plaintiff's testimony, he started to cross the street almost immediately after the light changed and was struck by defendant-driver's car when he was about 10 feet into the street. Under this version of the facts it would appear that plaintiff clearly had the right-of-way.

On the other hand, defendant-driver testified that when the light changed plaintiff turned around and looked at him and he nodded for plaintiff to go ahead and cross. When plaintiff turned back to the direction he had been facing he did not begin to cross but remained standing in the same place. The defendant-driver testified he then began inching forward and when his car was even with the sidewalk on Locust Street he looked at plaintiff again and observed that he was still standing in the same place. The defendant started to negotiate his turn and when his car was just past the Locust Street curb he looked at plaintiff for the third time and observed that he was standing in the same place and had not moved at all. Assuming that the plaintiff was simply standing on the corner and did not intend to cross Locust Street the defendant looked back at the road and continued to negotiate his turn. When his car was about one-half to three-quarters of the way through the crosswalk that runs across Locust Street he heard a "thud" and a yell and stopped immediately. Under this version of the facts

it would appear that the defendant was not negligent in failing to yield the right-of-way, nor did he "race for the intersection" as the plaintiff contends. Rather, it appears that the plaintiff stepped off the curb and walked into the side of the car after the driver determined that the plaintiff did not intend to cross and proceeded to make his turn.

The defendant-Eckes' testimony was corroborated by that of the witness, Borck, who testified that the car started first and was approximately one-quarter through its turn when appellant first stepped off the curb and walked into the car. The plaintiff emphasizes that the defendant-driver did not give him sufficient time to begin crossing because Borck testified that it took the car about three seconds to reach the point of impact from when it started. However, the witness' testimony was that three seconds was "an approximation" and that he did not really know how long it took. The defendant's version is further supported by his and Borck's testimony that the car was about three or four feet from the curb when it stopped after the impact, and also by the testimony of the investigating police officer who placed the point of impact about three-and-one-half feet from the curb.

In reviewing the evidence in its decision on the motions after verdict, the trial court stated:

"The jury had an opportunity to weigh the credibility of the plaintiff, who had indulged in the drinking of some alcoholic beverages, and based upon his testimony, which in certain respects was in sharp dispute with that of the defendant, the jury could choose to disregard such of his testimony which was not corroborated by other testimony that was deemed credible by them. It is apparent from the results that the jury was inclined to believe the defendant driver, who testified that he proceeded around the corner, making a righthand turn, after the signal turned green and after observing the plaintiff standing at the corner near the crosswalk and after ascertaining to his satisfaction that the plaintiff was not going to cross the street."

In addition to the conflicting stories of how the accident occurred there were other aspects of the plaintiff's testimony which, as the court noted, were sharply disputed and affected the credibility and weight of his testimony.

The plaintiff testified that there were "quite a few people" behind him on the curb and that when he looked to his left as he began walking he could not see anything "because of all the people around." He stated that these people began crossing the street behind him. However, the defendant testified that there was no one else on the corner but the plaintiff and this was corroborated by Borck.

The plaintiff also testified that there were two girls in the defendant-driver's car who got out after the accident and said, "Let's get out of here." He said they went to a restaurant across the street and that he saw them there later. The defendant testified that he was alone in the car, and Borck testified that he did not see anyone but respondent in the car, or get out of it after the accident.

In addition, there was conflict in the testimony as to who called the police and what transpired after plaintiff went back to the tavern.

"The weight of the testimony and the credibility of witnesses are primarily determinations to be made by the finder of fact, in this case the jury; and where more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the one reached by the fact finder. *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 138 N. W. 2d 238. . . ." *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 772, 151 N. W. 2d 706.

Considering the evidence in the light most favorable to supporting the verdict, there appears to be ample credible evidence to support the conclusion that defendant-driver turned only after he was satisfied by plaintiff's actions that he did not intend to cross the street, and that plain-

tiff blindly walked into the side of the car as it was nearing the completion of its turn. The jury's apportionment of 20 percent of the causal negligence to the defendant-driver makes it apparent the jury did believe that the defendant was causally negligent but not to the extent that the plaintiff was. There is nothing to support the conclusion that the defendant-driver should be held more negligent than the plaintiff as a matter of law under the provisions of sec. 346.23 (1), Stats., or in fact that he did violate that section. We are of the further opinion that the jury's apportionment of the causal negligence is not so patently unreasonable that this court should not substitute its judgment for that of the jury.

The plaintiff also argues that the verdict of the jury is perverse and that it can only be explained by the fact that the jury was prejudiced against him because of the evidence that he was intoxicated. The plaintiff admitted that he had a "couple of beers" to drink. The investigating police officer testified that appellant had a strong odor of alcohol on his breath and that he indicated on his report that appellant was in "more or less a drunken condition." Borck testified that appellant appeared to be "staggering, bobbing and weaving" before the accident occurred.

Evidence of intoxication is a proper consideration in determining negligence only if it is found that the amount of alcohol consumed so affected the person as to appreciably lessen or impair his ability to exercise ordinary care for his own safety. Intoxication itself does not give rise to liability but only does so when combined with some act of causal negligence. *Klinzing v. Huck* (1970), 45 Wis. 2d 458, 173 N. W. 2d 159; *Frey v. Dick* (1956), 273 Wis. 1, 76 N. W. 2d 716. The general rule as to the effect of intoxication upon negligence states that:

"**Intoxication.** Voluntary intoxication is not negligence per se. The law of negligence, however, does not put a premium upon voluntary drunkenness. From the stand-

point of civil liability, the conduct of an intoxicated man is judged by the same standard as that applied to the conduct of a sober man. Ordinary care is not measured by what every prudent drunken man would do under like circumstances, but by what every prudent sober man would do under like circumstances." 38 Am. Jur., *Negligence*, p. 683, sec. 36.

When there is evidence permitting a reasonable inference that the drinking done by a person affected him to the extent of lessening his ability to exercise ordinary care it is proper to instruct the jury as to the relationship between drinking and negligence. *See: Benedict v. Berg* (1938), 229 Wis. 1, 281 N. W. 650; *Rhyner v. Menasha* (1897), 97 Wis. 523, 73 N. W. 41. However, this court has said:

"As a general rule in an automobile accident case it is not necessary to give any instruction on the subject of driving while under the influence of liquor because it is immaterial what caused the particular alleged failure of the driver to use ordinary care. . . ." *Frey v. Dick, supra,* at page 9.

The plaintiff admits that he did not have an instruction on intoxication prepared in writing, however he orally requested it. He now contends that the court should have given such an instruction since it was required by the evidence. The defendants correctly argue that the general rule stated in *Frey v. Dick, supra,* is applicable here and that there was no need to give the instruction.

The special verdict submitted to the jury asked whether appellant was negligent with respect to his own safety and, if so, was such negligence a cause of the accident. In its instructions the court thoroughly instructed the jury on the exercise of ordinary care for one's safety on the question of causality and on the comparison of causal negligence.

There was sufficient credible evidence to support a finding of contributory negligence and to support the

jury's apportionment of the causal effect of that negligence.

The plaintiff further argues that the jury's answer to the damage question of wage loss indicates perversity. We have examined the record and conclude the jury's answer to the question of wage loss can be sustained by the evidence and that no perversity has been shown.

The plaintiff's final argument is that he should be granted a new trial in the interest of justice pursuant to sec. 251.09, Stats.

This court has stated:

"It is well settled that this court will not exercise its discretion to order a new trial in the interest of justice unless it has been convinced that there has been a probable miscarriage of justice, viewing the case as a whole. *Willenkamp v. Keeshin Transport System, Inc.* (1964), 23 Wis. 2d 523, 531, 127 N. W. 2d 804. . . ." *Michels v. Green Giant Co.* (1969), 41 Wis. 2d 427, 434, 164 N. W. 2d 217.

We have also said:

". . . But, the rule is just as well settled that a new trial may be granted in the interest of justice because the verdict is against the great weight of the evidence even though there is sufficient credible evidence to support the jury's finding. . . . A new trial in the interest of justice has been granted when the jury's comparison of negligence was against the great weight and clear preponderance of the evidence even though it cannot be said as a matter of law the jury's answer is wrong. . . ." *Pruss v. Strube* (1968), 37 Wis. 2d 539, 544, 545, 155 N. W. 2d 650, and cases cited therein.

A review of the record in this case does not indicate that there has been a probable miscarriage of justice. There was a sharp conflict in the testimony and the question of credibility and the resolution of the factual issues was for the jury.

*By the Court.*—Judgment affirmed.