# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1165 |

| | |
|---|---|
| COMPLETE TITLE: | Jose M. Correa, |
| |        Plaintiff-Respondent-Petitioner, |
| | Kitty Rhoades Secretary of State of Wisconsin Department |
| | of Health Services, |
| |        Involuntary-Plaintiff-Respondent, |
| |     v. |
| | Woodman's Food Market, |
| |        Defendant-Appellant, |
| | United Healthcare of Wisconsin, Inc., |
| |        Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 257,932 N.W.2d 188
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | May 19, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 21, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | William Sosnay |

JUSTICES:
KELLY, J., delivered the majority opinion for a unanimous Court.
NOT PARTICIPATING:
ANN WALSH BRADLEY, J., withdrew from participation

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Eric M. Knobloch, Michael A. Lococo,* and *Gruber Law Offices, LLC*, Milwaukee. There was an oral argument by *Eric M. Knobloch.*

For the defendant-appellant, there was a brief filed by *Lisa M. Lawless, Eric M. Meier,* and *Husch Blackwell LLP*, Milwaukee;

with whom on the brief was *Duffy Dillon* and *Duffy Dillon Law Office LLC*, Janesville. There was an oral argument by *Lisa M. Lawless*.

An amicus curiae brief was filed on behalf of Wisconsin Association for Justice by *Michael J. Cerjak, Rachel E. Potter*, and *Cannon & Dunphy, S.C.,* Brookfield.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP1165
 (L.C. No. 2016CV2542)

STATE OF WISCONSIN         :      IN SUPREME COURT

**Jose M. Correa,**

        **Plaintiff-Respondent-Petitioner,**

**Kitty Rhoades Secretary of State of Wisconsin Department of Health Services,**

        **Involuntary-Plaintiff-Respondent,**

    **v.**

**Woodman's Food Market,**

        **Defendant-Appellant,**

**United Healthcare of Wisconsin, Inc.,**

        **Defendant-Respondent.**

**FILED**

MAY 19, 2020

Sheila T. Reiff
Clerk of Supreme Court

KELLY, J., delivered the majority opinion for a unanimous Court. ANN WALSH BRADLEY, J., withdrew from participation.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 DANIEL KELLY, J. Mr. Jose Correa slipped on an unknown substance at a Woodman's Food Market ("Woodman's"), causing him to fall and sustain injuries. He says the substance caused an unsafe

condition within the meaning of Wis. Stat. § 101.11 (2013-14),[1] and that it was there long enough to give Woodman's constructive notice of its existence.  To prove how long the substance was on the floor, he introduced a security camera video showing the part of the store where he slipped and fell.  Everyone agrees there is no evidence to prove when the substance was deposited on the floor and that it is not possible to actually see the substance in the video.

¶2   In this case we decide whether ascertaining the point in time at which an unsafe condition commenced is a sine qua non of constructive notice.  We also decide whether the security camera video may support an inference that the substance was on the floor long enough to give Woodman's constructive notice of its existence.[2]  We conclude that a plaintiff need not prove the exact moment the unsafe condition commenced, so long as the evidence is sufficient to prove it existed long enough to give the defendant constructive notice of its presence.  We also conclude that a jury may infer from the security camera video in this case that the unsafe condition existed long enough to give the defendant constructive notice of its presence.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

[2] This is a review of an unpublished decision of the court of appeals, Correa v. Woodman's Food Market, No. 2018AP1165, unpublished slip op. (Wis. Ct. App. Jun. 25, 2019), which reversed the Milwaukee County Circuit Court, the Honorable William Sosnay presided.

2

I.  BACKGROUND

¶3   While shopping at Woodman's, Mr. Correa slipped on an unknown substance in the dairy aisle.  After collecting himself from the fall, he signaled a Woodman's employee who promptly cleaned the spot where he had slipped.  The employee also handed Mr. Correa a paper towel with which to wipe the substance off his shoe.  Woodman's security camera captured all of these events.

¶4   Unfortunately, Mr. Correa suffered an injury to his wrist during the fall.  His lawsuit against Woodman's alleged two causes of action:  (1) negligence;[3] and (2) a violation of Wisconsin's "safe place" statute (Wis. Stat. § 101.11).  After discovery closed, Woodman's moved for summary judgment arguing that Mr. Correa couldn't show that Woodman's knew the dairy product was on the floor and so couldn't prove an essential element of his claim.  The circuit court denied the motion because it concluded there were genuine issues of material fact.

¶5   At trial, Mr. Correa testified that he did not see the substance on the floor until after he slipped on it, and to this day he doesn't know what it was.  The jurors watched 10 minutes of video from a security camera, which commenced several minutes before the accident and ended several minutes after.  The video shows numerous customers walking near (and even over) the spot where Mr. Correa slipped; a Woodman's employee walking past the

---

[3] We do not review Mr. Correa's negligence claim.  The court of appeals correctly observed that he forfeited this claim because the jury was not instructed on it and he has not alleged this was error.

spot twice; Mr. Correa slipping and falling; Mr. Correa getting the attention of a Woodman's employee and showing him the location of the substance on which he slipped; the employee wiping the substance off the floor; and it shows that employee giving Mr. Correa a paper towel to wipe the substance off his shoe.[4] However, nothing in the video indicates when or how the substance came to be on the floor, nor is the video resolution high enough to actually show the substance. The jury also heard a Woodman's employee testify that after Mr. Correa fell he saw two spots of some type of substance on the floor. Another employee testified that, after reviewing 90 minutes of security footage prior to Mr. Correa's accident, he could not tell when the substance came to be on the floor.

¶6 At the close of Mr. Correa's case-in-chief, Woodman's moved for a directed verdict arguing that Mr. Correa's failure to introduce evidence showing how the substance on which he slipped came to be on the floor necessarily defeats a "safe place" claim. The circuit court denied the motion, and the jury eventually found Woodman's had constructive notice of the substance on the floor and that there had been a violation of the safe place statute. Woodman's post-trial motions (including a motion for a directed verdict or judgment notwithstanding the verdict, a motion to change a verdict answer, and a motion for a new trial) were all unsuccessful. Woodman's appealed.

---

[4] It is undisputed that all of Woodman's employees are trained to clean up spills as soon as they are aware of them.

¶7 The court of appeals reversed, ruling that because the evidence before the jury provided "[no] indication of how long the hazard existed on Woodman's floor," the circuit court had "clearly erred in denying Woodman's motion for a directed verdict." We granted Mr. Correa's petition for review and now reverse the court of appeals.

## II. STANDARD OF REVIEW

¶8 We will not overturn a circuit court's ruling on a motion for directed verdict unless it is clearly wrong:

> [W]hen the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong.

Olfe v. Gordon, 93 Wis. 2d 173, 186, 286 N.W.2d 573 (1980) (quoting Trogun v. Fruchtman, 58 Wis. 2d 569, 585, 207 N.W.2d 297 (1973) (quoting Slam v. Lake Superior T. & T. Ry., 152 Wis. 426, 432, 140 N.W. 30 (1913))).

¶9 A circuit court should grant a directed verdict "only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonable to permit unbiased and impartial minds to come to but one conclusion." Zillmer v. Miglautsch, 35 Wis. 2d 691, 698, 151 N.W.2d 741 (1967) (quoted source and citations omitted). "If there is any evidence to sustain a defense or a cause of action, the

5

case <u>must</u> be submitted to the jury." <u>Id.</u> at 699 (emphasis added; citation omitted).

### III.  ANALYSIS

¶10  Mr. Correa says he suffered injury consequent upon an unsafe condition that Woodman's had allowed to exist in violation of Wisconsin's "safe place" statute, Wis. Stat. § 101.11. Woodman's, however, says it was not aware of the unsafe condition. Additionally, it says Mr. Correa produced no evidence showing it should have been aware of that condition.  The circuit court disagreed, ruling that a jury could infer from Woodman's 10-minute security camera video that the unsafe condition existed long enough that Woodman's should have been aware of it.  The court of appeals, on the other hand, said Mr. Correa's "evidence does not provide a basis for any reasonable inference as to how long, prior to Correa's fall, the substance was on the floor."  <u>Correa v. Woodman's Food Market</u>, No. 2018AP1165, unpublished slip op., ¶31 (Wis. Ct. App. Jun. 25, 2019).  It said any inferences the jury might have drawn from the video with respect to that question would be mere speculation.  <u>Id.</u>  The disagreement between the circuit court and the court of appeals reveals that this case hinges on the type of evidence a plaintiff must produce to demonstrate that an unsafe condition has existed long enough that a reasonably diligent defendant would discover and remedy it.

¶11  We begin our analysis with the requirements imposed by Wisconsin's "safe place" statute:

> Every employer shall furnish employment which shall be
> safe for . . . [the]  frequenters  thereof  and  shall

6

furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

Wis. Stat. § 101.11.  The parties agree that the safe place statute applies to Woodman's.

¶12  To make out a claim under the safe place statute, Mr. Correa must prove:  "(1) there was an unsafe condition associated with [Woodman's floor]; (2) the unsafe condition caused [Mr. Correa's] injury; and (3) [Woodman's] had either actual or constructive notice of the unsafe condition before [Mr. Correa's] injury."  Hofflander v. St. Catherine's Hosp., Inc., 2003 WI 77, ¶89, 262 Wis. 2d 539, 664 N.W.2d 545.  Woodman's does not contest either of the first two elements; its defense addresses only whether it had notice of the unsafe condition.  And because Mr. Correa does not argue Woodman's actually knew of the unsafe condition, the instant contest resolves to the narrow question of constructive notice.

¶13 An "owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it."  Megal v. Green Bay Area Visitor & Convention Bureau, Inc., 2004 WI 98, ¶12, 274 Wis. 2d 162, 682 N.W.2d 857.  How long that must be is a fact intensive question: "The length of time required for the existence of a defect or

7

unsafe condition that is sufficient to constitute constructive notice depends on the surrounding facts and circumstances, including the nature of the business and the nature of the defect." Id., ¶13. Because this is a factual question, we traditionally leave it for the jury to resolve. Id., ¶20 n.2 ("Whether an employer or owner has notice of an unsafe condition generally is a question of fact left to the jury."); see also Hofflander, 262 Wis. 2d 539, ¶25 ("As to the safe place claim, the court held that there were questions of fact for a jury whether . . . the defendants had constructive notice of the disrepair.").

¶14 In concluding that Mr. Correa had failed to prove constructive notice for lack of evidence regarding how long the unsafe condition existed, both Woodman's and the court of appeals relied heavily on Kochanski v. Speedway SuperAmerica, LLC, 2014 WI 72, 356 Wis. 2d 1, 850 N.W.2d 160, and Kaufman v. State St. Ltd. P'Ship, 187 Wis. 2d 54, 522 N.W.2d 249 (Ct. App. 1994). Both cases are instructive and provide the general parameters for assessing the constructive notice element of a "safe place" claim. In the latter case, Mrs. Kaufman slipped on a banana peel in the parking lot when returning to her car from a shopping errand. She had walked over the same area on the way into the store but had not noticed a banana peel at that time. The court of appeals based its analysis on the rule that "constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation." Id. at 63 (quoted source omitted). It concluded that, notwithstanding Mrs. Kaufman's testimony, "there

8

was no evidence of how long the banana was in the parking lot, and any conclusion in that regard would be purely speculative." Id.

¶15 Twenty years later, we addressed a similar situation in Kochanski. There, the plaintiff slipped or tripped on some ice in front of a Speedway store, causing him injury. As in this case, Mr. Kochanski brought a "safe place" claim and introduced (inter alia) security camera footage of his fall. The evidence showed that there had been a light snowfall the morning of the accident, but nothing to establish how long the snowfall had created a potentially unsafe condition. We observed that "[o]rdinarily, constructive notice requires evidence as to the length of time that the condition existed." Kochanski, 356 Wis. 2d 1, ¶33 (quoting Megal, 274 Wis. 2d 162, ¶12). And we quoted Kaufman's observation that "'constructive notice [usually] cannot be found when there is no evidence as to the length of time the condition existed.'" Kochanski, 356 Wis. 2d 1, ¶34. We concluded that "[s]peculation as to how long the unsafe condition existed and what reasonable inspection would entail are insufficient to establish constructive notice."[5] Id., ¶36.

---

[5] The gradual accumulation of snow at issue in Kochanski may have eventually created an unsafe condition, but the video footage was insufficient to demonstrate that an accumulation sufficient to create the unsafe condition had been present long enough to give the defendant constructive notice of its existence. We also observed that the video's subject-matter limited its instructive value: "Furthermore, given the weather that often occurs in February in Wisconsin, standing alone, a temporary natural accumulation of snow is insufficient to provide notice of an unsafe condition under the safe-place statute." Kochanski v. Speedway SuperAmerica, LLC, 2014 WI 72, ¶37, 356 Wis. 2d 1, 850 N.W.2d 160.

¶16  And that brings us to the nub of the parties' dispute. Before the case may reach the jury, the plaintiff must present a quantum of evidence sufficient to render the eventual answer non-speculative.  Woodman's says the security camera video gives us no information about how long the unsafe condition existed because the video does not capture the moment the troublous substance was deposited on the floor.  And without that information, Woodman's says, it is impossible to measure the amount of time the unsafe condition existed:  "If no evidence brackets the duration of the hazard, then constructive notice cannot be proven."  Woodman's also asserts that nearly 100 years of law rejects Mr. Correa's proposition that "the inability to prove the begin-time for the dangerous condition should not be fatal to the constructive notice analysis."  The court of appeals also addressed the durational issue, but from a slightly different angle.  It said that Mr. Correa's concession that the video's resolution was not sufficient to actually show the substance on the floor defeated his argument that the video "supports a reasonable inference that the substance was present for longer than ten minutes." Correa, No. 2018AP1165, unpublished slip op., ¶27.

¶17  This gives rise to two distinct questions related to the constructive notice element of a "safe place" claim.  First, whether a plaintiff must positively identify the point in time at which the unsafe condition arose.  And second, whether a jury may infer the duration of the unsafe condition from evidence such as the security camera footage submitted to the jury in this case.

¶18 The first question is the more straightforward, and so we will start there. The answer is that identifying the moment in time at which a condition becomes unsafe is not a sine qua non of the test described in Kochanski (or Kaufman). Rather, the plaintiff's responsibility is to prove the existence of the unsafe condition for a quantum of time sufficient to support a finding of constructive notice. The temporal aspect of the constructive notice element is functional, not formalistic. That is to say, the purpose of inquiring into how long the unsafe condition existed is to determine whether a "vigilant owner or employer" would have had "the opportunity to discover and remedy the situation." Kochanski, 356 Wis. 2d 1, ¶34 (quoted source omitted). So the evidence need only show that the unsafe condition existed long enough for the defendant to discover and remedy it. For example, if a reasonably vigilant owner would have discovered and remedied an unsafe condition within 10 minutes, and the evidence shows the condition lasted that long, it is of no moment that the unsafe condition had actually commenced an hour earlier. The 10-minute duration is the legally relevant period of time.[6] The commencement an hour earlier is of mere academic interest. It is axiomatic that a plaintiff's case cannot be insufficient for failing to prove a point with no legal significance. The focus here, as in Kochanski and Kaufman, is whether the evidence shows an extant

---

[6] This is not to say, of course, there is any case-independent significance to how long the condition existed. Whether it is 1 minute, 10 minutes, or 90 minutes, the amount of time necessary to establish constructive notice of the unsafe condition is a fact-driven question for the jury to answer.

11

unsafe condition for a period of time sufficient to give a reasonably vigilant owner or employer the opportunity to discover and remedy it.

¶19 This question came to the fore in this case because of the increasing prevalence of video recordings of our everyday public activities. Ordinarily, it would be difficult to prove how long an unsafe condition existed without identifying the point at which it commenced. With video footage, however, it is possible to work backwards from the point of injury for a period of time sufficient to demonstrate that the unsafe condition should have been discovered and remedied. That amount of time may or may not encompass the point at which it commenced. But if the captured amount of time is enough to satisfy the constructive notice element, there is no need to rewind the video even further to discover when it arose. And that brings us to the second question of whether the video evidence in this case was capable of supporting the constructive notice element of a safe place claim.

¶20 The court of appeals observed that the video resolution was not high enough to directly observe the substance on which Mr. Correa slipped. Therefore, it reasoned, the video contains no evidence of how long the substance was on the floor. And because Mr. Correa did not identify the point in time at which the substance fell to the floor, the court of appeals concluded he had failed to introduce any evidence of the temporal aspect of the constructive notice element of his case. Specifically, it said that "such evidence does not provide a basis for any reasonable inference as to how long, prior to Correa's fall, the substance

12

was on the floor.   The jury could only guess as to how long the substance was on the floor.   Any such inference would be to engage in speculation."   Correa, No. 2018AP1165, unpublished slip op., ¶31.

¶21 Inferences, however, are not speculation.   They are distinct in that the former are "drawn from established facts which logically supports the same."   Smith v. Chicago & N.W. Ry. Co., 246 Wis. 628, 632, 18 N.W.2d 352 (1945).   Federal practice forms provide a good definition of an inference:   "Inferences are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case."   3B Jay E. Grenig West's Fed. Forms, District Courts-Civil § 34:41 (5th ed. 2019).   They are commonly used to complete the evidentiary picture: "Both juries and judges may, of course, draw logical inferences from the evidence, connecting its dots into a coherent pattern."   State v. Sarnowski, 2005 WI App 48, ¶12, 280 Wis. 2d 243, 694 N.W.2d 498.   When we instruct jurors before sending them to deliberate, we tell them to "[d]raw your own conclusions and your own inferences . . . ."   4A Jay E. Grenig Wis. Pl. & Pr. Forms § 33:137 (5th ed. 2019).

¶22 When the court of appeals demoted the jury's conclusions from the video to the status of speculation, it deprived the jury of its unquestionable prerogative to draw inferences from the evidence presented to them.   Landrey v. United Servs. Auto. Ass'n, 49 Wis. 2d 150, 157, 181 N.W.2d 407 (1970) ("[W]here more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the one reached by the fact finder.");

13

Estate of Cavanaugh by Cavanaugh v. Andrade, 202 Wis. 2d 290, 306, 550 N.W.2d 103 (1996) ("[W]e must sustain the jury's finding 'if there is any credible evidence under any reasonable view or any reasonable inferences derived therefrom that support [it].'" (quoted source omitted; internal marks omitted; some alteration in original)).

¶23  The video in this case could potentially support several inferences. Starting with the established fact (as required by Chicago & N.W. Ry. Co.) that there was a foreign substance on Woodman's floor, and that Mr. Correa slipped on it, a jury could reasonably infer the following. First, one could infer the location of the substance. That inference could follow from the footage that captured Mr. Correa falling, an employee's response to Mr. Correa's alert to the substance on the floor, the employee cleaning the indicated area, and Mr. Correa wiping his shoe with a paper towel given to him by the employee. Second, one could infer the substance was on the floor for at least 10 minutes. That inference could be drawn from watching the 10-minute video and concluding it did not show the substance falling to the floor. Such a conclusion would necessarily mean the substance had been there for at least 10 minutes, unless one were to assume autogenesis (an unnecessarily exotic explanation for a mundane occurrence such as a spill on a grocery store floor). Third, one could infer the existence of the substance for the 80 minutes prior to the video the jury considered. That inference could follow from the Woodman's employee's testimony that the video he reviewed (which covers the 80 minutes leading up to the video the jury saw)

14

did not show the substance falling to the floor. Based on the same rationale above, a jury could conclude the substance was on the floor for at least 90 minutes. Each of these inferences could logically follow from facts established through Mr. Correa's testimony, the content of the video, or both. They are not necessary inferences, however, just legitimate and logical inferences.[7]

¶24 With all of that in mind, we turn to our review of whether the circuit court should have granted Woodman's motion for a directed verdict. We will not disturb the circuit court's ruling unless we are "clearly convinced that the conclusion of the trial judge is wrong." Olfe, 93 Wis. 2d at 186 (quoting Trogun, 58 Wis. 2d at 585 (quoting Slam, 152 Wis. at 432)). A trial judge's responsibility is to grant the motion "only when the evidence gives rise to no dispute as to the material issues or only when the

---

[7] Woodman's cited a host of cases to support its point that constructive notice cannot be established without proving how long the unsafe condition existed, including May v. Skelley Oil Co., 83 Wis. 2d 30, 264 N.W.2d 574 (1978); Low v. Siewert, 54 Wis. 2d 251, 195 N.W.2d 451 (1972); Shoemaker v. Marc's Big Boy, 51 Wis. 2d 611, 187 N.W.2d 815 (1971); Merriman v. Cash-Way, Inc., 35 Wis. 2d 112, 150 N.W.2d 472 (1967); Rosenthal v. Farmers Store Co., 10 Wis. 2d 224, 102 N.W.2d 222 (1960); Boutin v. Cardinal Theatre Co., 267 Wis. 199, 64 N.W.2d 848 (1954); Reiher v. Mandernack, 234 Wis. 568, 291 N.W. 758 (1940); Dierkes v. White Paving Co., 229 Wis. 660, 283 N.W. 446 (1939); Lundgren v. Gimbel Bros., 191 Wis. 521, 210 N.W. 678 (1927). But this misses the point. Our holding does not relieve plaintiffs from the obligation to prove the unsafe condition lasted long enough to establish constructive notice. Our holding is simply that locating the temporal commencement of the unsafe condition is not necessary if the extant evidence shows it existed long enough to give a reasonably diligent store owner an opportunity to discover and remedy it.

evidence is so clear and convincing as reasonable to permit unbiased and impartial minds to come to but one conclusion." Zillmer, 35 Wis. 2d at 698 (quoted source and citation omitted). Consequently, "[i]f there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury." Id. at 699 (emphasis added; citation omitted).

¶25 Mr. Correa's testimony and the security camera video were sufficient to permit an inference that a foreign substance had been on Woodman's floor for at least 90 minutes.[8] Woodman's does not argue in this court that this was an insufficient amount of time to give it constructive notice of the substance's presence, nor does it argue that the substance did not create an unsafe condition. In light of the record before it, the circuit court could reasonably conclude there was at least some evidence to sustain Mr. Correa's cause of action with respect to constructive notice. Under those circumstances, its duty to submit the case to the jury was mandatory. Therefore, we do not believe the circuit

---

[8] This is not to say, however, that the jury's inferences were the only possible options. A jury could instead conclude that the video's quality was insufficient to show the moment the substance fell to the floor. Such a conclusion would interrupt the logical deduction regarding how long the substance was there. But neither the circuit court nor this court has the authority to choose between the possible inferences. That is a choice left to the jury. See Landrey v. United Servs. Auto. Ass'n, 49 Wis. 2d 150, 157, 181 N.W.2d 407 (1970) ("[W]here more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the one reached by the fact finder.").

16

court was clearly wrong in denying Woodman's motion for directed verdict.[9]

## IV.  CONCLUSION

¶26 For purposes of a claim under Wis. Stat. § 101.11, determining the point in time at which an unsafe condition commenced is not necessarily a sine qua non in establishing constructive notice.  Instead, the plaintiff's responsibility is simply to demonstrate that the unsafe condition lasted long enough

---

[9] The same analysis demonstrates that summary judgment in Woodman's favor would have been inappropriate.  "We review the disposition of a motion for summary judgment de novo, applying the same methodology the circuit courts apply."  Leicht Transfer & Storage Co. v. Pallet Cent. Enterprises, Inc., 2019 WI 61, ¶8, 387 Wis. 2d 95, 928 N.W.2d 534 (citation omitted).  "Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoted source omitted).

Because the materials presented——including the security camera footage——revealed there was a genuine issue with respect to a material fact (to wit, the length of time the substance was on the floor), the circuit court did not err in denying Woodman's motion for summary judgment.  For the same reason, the circuit court did not clearly err in denying Woodman's motion to change a verdict answer, and it did not misuse its discretion in denying its motion for a new trial.  See respectively Best Price Plumbing, Inc. v. Erie Ins. Exch., 2012 WI 44, ¶44, 340 Wis. 2d 307, 814 N.W.2d 419 ("A circuit court's decision to change the jury's answer is 'clearly wrong' if the jury verdict is supported by 'any credible evidence.'" (quoted source omitted)); and Lange v. Olson, 185 Wis. 657, 661, 202 N.W. 361 (1925) ("An order which grants or refuses a new trial will not be disturbed in this court except in a clear case of an abuse of discretion. Where a new trial is denied, if there is any credible competent evidence which sustains the verdict, this court will not disturb the determination; that is, it will hold there has been no abuse of discretion.").

to allow a reasonably diligent store owner to discover and remedy the condition. Further, we hold that, upon the state of the record in this case, a jury could infer that the unsafe condition causing Mr. Correa's injury lasted long enough to give Woodman's constructive notice of its existence without proving the point at which the unsafe condition commenced. Therefore, the circuit court did not err in denying Woodman's motion for summary judgment, its motion for a directed verdict, its motion to change a verdict answer, and its motion for a new trial. For those reasons, we reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶27 ANN WALSH BRADLEY, J. withdrew from participation.