COURT OF APPEALS
DECISION
DATED AND FILED

January 4, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP570**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV1943

IN COURT OF APPEALS
DISTRICT II

---

KAREN WIDENSKI,

    PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

  V.

PROHEALTH CARE, INC.,

    DEFENDANT-RESPONDENT-CROSS-APPELLANT.

---

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Karen Widenski appeals from a judgment, entered following a directed verdict, dismissing her wrongful termination claim against ProHealth Care, Inc.   Widenski argues the circuit court erred by granting ProHealth's motion for a directed verdict.   The dismissal was based upon the court's conclusion that the trial evidence failed to demonstrate Widenski was terminated for refusing to violate WIS. STAT. §§ 943.39 and 943.395 (2019-20).[1] ProHealth cross-appeals, asserting the circuit court erred by refusing to grant its summary judgment motion and permitting the case to proceed to trial.

¶2     We conclude the circuit court properly granted a directed verdict. The evidence presented during Widenski's case-in-chief, considered in the light most favorable to Widenski, failed to demonstrate that inaccurate medical records were created with the intent to injure or defraud necessary to establish a violation of WIS. STAT. § 943.39.   We further conclude the evidence failed to demonstrate that any inaccuracies in the medical records were generated in connection with a contemplated or actual attempt to bill for services not rendered, thereby thwarting Widenski's reliance on WIS. STAT. § 943.395.   Finally, we conclude Widenski's general assertion of a duty to investigate is not cognizable under the statutes. Accordingly, we affirm.

## BACKGROUND

¶3     ProHealth hired Widenski on May 1, 2017, as a director in its Chronic Disease Management Department.   She was terminated on August 15, 2017.   Thereafter, she filed a lawsuit against ProHealth, alleging she had been

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

wrongfully terminated for investigating fraudulent billing activity by certain nurse practitioners.[2] Widenski alleged that by falsifying medical records indicating they were seeing patients they did not actually see, the nurses may have been violating several state and federal laws, including WIS. STAT. § 943.39. Widenski also alleged the billing may have been used to submit fraudulent claims for patient health insurance payments in violation of, *inter alia*, WIS. STAT. § 943.395. Widenski asserted that she suffered lost wages and benefits and emotional distress as a result of the wrongful termination.[3]

¶4      The case proceeded to trial, at which Widenski and several ProHealth employees testified. During Widenski's case-in-chief, she presented testimony from ProHealth employees that generally established the unremarkable proposition that false information should not be entered in patient records by nurses. That testimony also acknowledged that errors in patient records occur and that there is a process for amending records.

¶5      The testimony established that there are two forms of medical records created by the nurses: consult notes, which are generated when the nurse initiates care for a diabetic patient, and progress notes, which document ongoing patient care. Rebecca Hendrickson, whose notes are at the center of this appeal,

---

[2] For ease of reading, we use the term "nurse" throughout this opinion. The testimony referred to these individuals as, specifically, diabetes mellitus nurse practitioners.

[3] Widenski asserts she should be entitled to damages for emotional distress and punitive damages as part of her wrongful termination claim. She acknowledges that such damages are presently not recoverable under **Brockmeyer v. Dun & Bradstreet**, 113 Wis. 2d 561, 335 N.W.2d 834 (1983). This court is bound by existing precedent, *see* **Cook v. Cook**, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997), and we acknowledge that Widenski makes the argument to preserve the matter for possible review by the Wisconsin Supreme Court. Nonetheless, our conclusion that the circuit court properly granted ProHealth's motion for a directed verdict obviates the need to consider her arguments concerning an advisory jury decision regarding these damages.

testified that the notes contained templates to help them efficiently move through the information they are supposed to enter. The templates for both types of notes contemplated face-to-face interaction with a patient.

¶6 The testimony established that during research into a nurse shortage, Widenski raised concerns about certain "remote notes" created by nurses. Remote notes were used by nurses to document consultations provided by the nurses to another service provider regarding a patient when the nurse did not physically see that patient. To generate a remote note, Hendrickson testified that she started with a progress or consult note and then removed certain portions of the template that were inapplicable, such as the "physical exam" component, the "review of systems" component, and the "time statement that comes in at the bottom." The word "remote" was also added to the note heading.

¶7 It is undisputed that three of Hendrickson's remote notes retained the time statement at the bottom, which required the nurse to enter the total time spent with the patient.[4] The testimony at trial established that it is inaccurate to state that a particular amount of time was spent with a patient when using a remote note. Hendrickson testified that the failure to delete that section of the remote notes was a mistake on her part and merely part of the template that did not get removed. Hendrickson testified her errors did not affect the patient's treatment plan or get billed.

---

[4] During her testimony, Widenski generically stated that there were other remote notes she discovered that contained inaccurate information. However, no other remote notes were presented at trial, and Hendrickson was questioned only about three specific remote notes she created on July 7 and 10, 2017: one consult note and two progress notes. We confine our analysis solely to the three notes presented a trial, which were Plaintiff's Trial Exhibits 2, 69 and 75.

¶8 The trial testimony also established that remote notes should not be billed. The fact that the remote notes were not billed was a considerable issue for the business, as no revenue was being generated from remote notes. Despite this, Widenski testified she was concerned that remote notes could be billed anyway. She stated her concern was based upon two possible billing avenues: the nurse could enter a billing code on the remote note at the time of service, or the billing department could later assess that the nurse provided a service that should have been billed and possibly enter the coding.

¶9 There was no evidence, however, that any bill was generated based on a remote note. The evidence was undisputed that remote notes are not billed generally, nor did Hendrickson bill the specific remote notes at issue here. Progress notes are not automatically billed; for a nurse to "drop charges," he or she would have to access a separate "charge capture screen" on a note and enter bill coding information about the services actually provided. The testimony also established that the billing and coding department would not generate a bill if they saw the word "remote" in a note. An audit confirmed no billing took place on remote notes.

¶10 Widenski testified that she did not know whether any billing ever occurred. She handed off the billing portion of the investigation to another person. Moreover, Widenski was asked specifically why she believed the time statements on remote notes were made with intent to defraud or injure. Widenski testified her only reason for believing they were done intentionally was the seemingly evasive statements Hendrickson had given when questioned about the entries. Widenski admitted she did not know whether a remote note that retained the time statement caused injury to anyone. She also testified that no one ever told her to direct

5

anyone to stop investigating whether remote notes were billed, nor did anyone direct her to break any law.

¶11  At the close of evidence, ProHealth sought a directed verdict, asserting as relevant here that Widenski had failed to present evidence that any inaccurate remote notes were made with intent to falsify or deceive. The circuit court agreed, construing the relevant statutes to refer to "a record that's intentionally made false through a deceptive maneuver." The court determined the evidence demonstrated that incorrect portions of the remote notes were not generated with the requisite intent and, in any event, there had been no evidence to establish that any billing occurred as a result of those mistakes. The court concluded that, considering the evidence in the light most favorable to Widenski, no reasonable juror could find in her favor on her wrongful discharge claim. Widenski now appeals.

## DISCUSSION

¶12  A motion for a directed verdict tests the legal sufficiency of the evidence. *See* WIS. STAT. § 805.14(3). We will overturn a circuit court's ruling on a motion for directed verdict only if it is clearly wrong. *Correa v. Woodman's Food Mkt.*, 2020 WI 43, ¶8, 391 Wis. 2d 651, 943 N.W.2d 535. A circuit court should grant a directed verdict only when there is no dispute as to the material issues or when the evidence is so clear and convincing that it would allow a reasonable fact finder to come to only one conclusion. *Id.*, ¶9.

¶13  The employment-at-will doctrine dictates that an employer is generally permitted to fire an employee for reasons good, bad, or nonexistent. *Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 663, 571 N.W.2d 393 (1997). There is a "narrow public policy exception to the doctrine" that permits the

employee to pursue a wrongful discharge action when the termination "clearly contravenes the public welfare and gravely violates paramount requirements of public interest." *Id.* at 663-64 (quoted source omitted).

¶14     A termination contravenes the public welfare and gives rise to an action for wrongful discharge "when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law."[5]  *Id.*  The public policy underlying such an action need not come solely from explicit constitutional or legislative statements, *see Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶39, 237 Wis. 2d 19, 614 N.W.2d 443, but in this case, Widenski asserts it comes from the latter.   Specifically, Widenski claims she was wrongfully discharged for her investigation into the creation of fraudulent patient notes, contrary to WIS. STAT. §§ 943.39(1) and 943.395.[6]

---

[5] Once the plaintiff demonstrates that the discharge violated a fundamental and well-defined public policy, the burden shifts to the employer to show that the discharge was precipitated by just cause. *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶37, 237 Wis. 2d 19, 614 N.W.2d 443.

[6] WISCONSIN STAT. § 943.39(1) states:

> Whoever, with intent to injure or defraud, does any of the following is guilty of a Class H felony:
>
> (1) Being a director, officer, manager, agent or employee of any corporation or limited liability company falsifies any record, account or other document belonging to that corporation or limited liability company by alteration, false entry or omission, or makes, circulates or publishes any written statement regarding the corporation or limited liability company which he or she knows is false[.]"

WISCONSIN STAT. § 943.395 states:

> (1) Whoever, knowing it to be false or fraudulent, does any of the following may be penalized as provided in sub. (2):

(continued)

7

¶15 Widenski ostensibly relies on the plain language contained in WIS. STAT. § 943.39(1), claiming that the statute dictates that Widenski had a duty to correct a false patient note regardless of whether that note was "created by an intentional act of fraud or by mistake." We disagree and conclude, consistent with the circuit court's determination, that intent is plainly relevant. Although "[t]he public policy of proscribing false reporting in business dealings is fundamental and well defined," *Strozinsky*, 237 Wis. 2d 19, ¶51, the statute plainly requires that the false record be made (or, as Widenski urges, that the failure to act upon a false record occur) with the "intent to injure or defraud," *see* § 943.39.

¶16 Regardless of how the relevant actor is framed under WIS. STAT. § 943.39—the person creating a fraudulent note or the person who assents in its creation—a directed verdict was appropriate. There was no direct evidence that

(a) Presents or causes to be presented a false or fraudulent claim, or any proof in support of such claim, to be paid under any contract or certificate of insurance.

(b) Prepares, makes or subscribes to a false or fraudulent account, certificate, affidavit, proof of loss or other document or writing, with knowledge that the same may be presented or used in support of a claim for payment under a policy of insurance.

(c) Presents or causes to be presented a false or fraudulent claim or benefit application, or any false or fraudulent proof in support of such a claim or benefit application, or false or fraudulent information which would affect a future claim or benefit application, to be paid under any employee benefit program created by ch. 40.

(d) Makes any misrepresentation in or with reference to any application for membership or documentary or other proof for the purpose of obtaining membership in or noninsurance benefit from any fraternal subject to chs. 600 to 646, for himself or herself or any other person.

Hendrickson included the time statements in the remote notes intentionally; Hendrickson, rather, claimed the information about the amount of time spent with patients was entered by mistake as a result of her failure to properly alter the template. Additionally, Widenski has not established that the circumstantial evidence surrounding the notes—including the worker shortage, Hendrickson's initially evasive responses to Widenski's questioning about the remote notes, and the nature of the mistaken entries themselves—constitutes evidence upon which a reasonable jury could find a specific intent to defraud in light of the undisputed evidence that no billing action was ever taken or contemplated on the remote notes. *Cf.* ***Brockmeyer v. Dun & Bradstreet***, 113 Wis. 2d 561, 578, 335 N.W.2d 834 (1983) (noting that an inference that an employer was concerned about the employee's potential in-court testimony was insufficient evidence to support an allegation that the employee was asked to commit perjury).

¶17     This last point regarding the absence of any evidence concerning a contemplated or actual attempt to bill for the remote notes is also dispositive of Widenski's wrongful discharge claim pursuant to WIS. STAT. § 943.395. Because no "false or fraudulent claim" was ever presented, the circumstances could not have given rise to a violation of § 943.395(1)(a). Similarly, subsec. (1)(b) proscribes the making of a knowingly false or fraudulent writing "with knowledge that the same may be presented or used in support of a claim for payment under a policy of insurance."[7] Here, the only testimony was that remote notes would not,

---

[7] Widenski relies on her own testimony that Hendrickson initially could not recall whether she "dropped charges" on remote notes. However, Hendrickson's uncertainty in this regard certainly cannot create an inference of the knowledge necessary as a general proposition, and certainly not taking into consideration the totality of the evidence presented here.

and could not, be billed without separate coding action by the nurse. Accordingly, a directed verdict was appropriate.

¶18    In suggesting that sufficient evidence was presented during her case-in-chief, Widenski primarily relies on her asserted duty to investigate a potential violation of the two statutes. We reject Widenski's attempt to broaden the statutes in this fashion. As set forth above, the statutes (as a general matter) proscribe the intentional falsification of business records and insurance fraud. They do not criminalize the failure to investigate a potential violation of those statutes.

¶19    When articulating the public policy exception to the employment-at-will doctrine, our supreme court warned that courts "should proceed cautiously when making public policy determinations." *Brockmeyer*, 113 Wis. 2d at 573. Employers are liable for those terminations that "effectuate an unlawful end." *Id.* Here, Widenski can point to no unlawful end that her termination accomplished. Our holding in this case is consistent with *Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 396 N.W.2d 167 (1986), wherein our supreme court affirmed the dismissal of a wrongful discharge claim in which the employee complained of, among other things, the falsification of personnel records and expense reports, but was himself never directed to falsify records or lie. *See id.* at 139, 147.

¶20    ProHealth is entitled to WIS. STAT. RULE 809.25 costs associated with the appeal and cross-appeal.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

10